UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**DESIRAE BROWN,**

        Plaintiff,

v

**PECKHAM, INC.,** a Michigan nonprofit Corporation, and **BYRON WILLIAMS**, individually,

        Defendants.
                               /

Case No:

Hon:

Mag:

Tim P. Seeger (P83315)
GREWAL LAW PLLC
801 Broadway NW Ste. 302
Grand Rapids, MI 49504
(616) 259-8463
tseeger@4grewal.com
                               /

**COMPLAINT AND JURY DEMAND**

**NOW COMES** Plaintiff, Desirae Brown, by and through her attorneys, Tim P. Seeger and GREWAL LAW PLLC, and for her Complaint against Peckham, Inc. ("Defendant Peckham"), and Byron Williams ("Defendant Williams"), states as follows:

**GENERAL ALLEGATIONS AND VENUE**

1. This is an action stating a federal cause of action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 USC 2000e et seq., discrimination pursuant to the Michigan Elliott-Larsen Civil Rights Act, MCL 37.2101 et seq., hostile work environment, sexual assault, battery, and intentional infliction of emotional distress.

2. Plaintiff, Desirae Brown ("Ms. Brown"), at all times relevant herein, was a resident of the City of Lansing, Ingham County, Michigan.

3. Defendant Peckham is a domestic nonprofit corporation organized in Michigan, authorized to and doing business in Ingham County, Michigan.

4. Upon information and belief, Defendant Williams, at all relevant times herein, was a resident of Ingham County, Michigan.

5. The incidents which are the subject matter of this lawsuit occurred in Ingham County, Michigan.

6. This Honorable Court has "federal question" jurisdiction pursuant to 28 USC § 1331 for the reason that the Plaintiff's Complaint states claims pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 USC §2000 et. seq.

7. This Court has jurisdiction over State pendent claims also known as the Elliot-Larsen Civil Rights Act, Act 453 of 1976.

8. This Honorable Court has supplemental jurisdiction over the Plaintiff's state law claims pursuant to 28 USC §1367 because all claims are substantially related as to form part of the same case.

9. Venue is proper in this judicial district pursuant to 28 USC §1391 for the reason that the unlawful acts alleged occurred within this judicial district.

10. Plaintiff timely filed her Charges of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), attached as **Exhibit A**.

11. Plaintiff received her Right-to-Sue Letters from the EEOC on November 28, 2023, attached as **Exhibit B.**

12. Plaintiff filed this Complaint within 90-days of receiving her Right-to-Sue Letter from the EEOC.

**SPECIFIC FACTUAL ALLEGATIONS**

13. Plaintiff repeats and realleges each and every paragraph of this Complaint as though fully set forth herein verbatim.

14. Ms. Brown has a mental disability. In one of her first Individualized SCA-S Continuous Improvement Plans for work at Defendant Peckham, dated January 17, 2014, Ms. Brown is determined to have the following functional limitations: difficulty managing anxiety; poor sleep patter; feelings of hopelessness; no long term work history; panic attacks; may not ask for help; and withdrawal from others – inability to self-motivate.

15. Ms. Brown began her employment with Defendant Peckham in January 2014. She worked until March 2017 as a Supply Chain Shipping and Receiving Clerk at the Warehouse, called Watertown B.

16. It was at this time that she first met Defendant Williams, who was the manager of the warehouse.

17. Based upon information and belief, Defendant Williams had the authority to hire and fire employees, including Ms. Brown.

18. Ms. Brown understood that Defendant Williams was her manager and had control over the terms and conditions of her employment.

19. Ms. Brown had heard from other employees that Defendant Williams was strict, had worked his way up in the company from being a janitor, had been in prison, and had no problem firing people.

20. Ms. Brown was immediately intimidated by Defendant Williams.

21. Still, Ms. Brown began to have conversations with Defendant Williams and found him intelligent and that he had worked hard to get to his position as manager.

22. Defendant Williams often would come out onto the Warehouse floor to speak to Ms. Brown and her friend, Ms. Brooke Ruiz.

23. Upon information and belief, in Spring 2014, Defendant Williams developed a sexual relationship with Ms. Ruiz, a Peckham employee under his management.

24. Ms. Brown learned about this relationship from Ms. Ruiz and Defendant Williams became aware of her knowledge of it.

25. At that time, upon information and belief, Defendant Williams already had a relationship with the mother of his child who both lived with him.

26. Upon information and belief, Ms. Brown learned that Ms. Ruiz became impregnated by Defendant Williams and had an abortion. She further learned that Defendant Williams was forced to move out of his residence after the mother of his child learned that he had a relationship with Ms. Ruiz.

27. All of this information about her manager and her friend caused great stress and anxiety for Ms. Brown.

28. Following the birth of her own child, Ms. Brown resigned from Peckham.

29. After a year, in 2018, Ms. Brown desired a better life for her and her child. She contacted Mr. Williams to see about new job opportunities at Defendant Peckham because she knew it as a place that employs people of different disabilities.

30. Ms. Brown applied for and secured a job at Watertown A Warehouse doing the same type of job as a Supply Chain Shipping and Receiving clerk.

31. In her new position, she was energized, lost weight and her good work was being noticed.

32. Ms. Brown received an Employee of the Month award at Peckham and was making more money than she ever had before. She was even able to purchase a new townhome.

33. Ms. Brown worked overtime at her new job, including helping with annual inventory at Warehouse B in Spring 2019.

34. Ms. Brown received a warm welcome from many of her former co-workers at Warehouse B, including Defendant Williams.

35. Defendant Williams offered positive affirmations, including "You have always been such a beautiful young woman," and "You have the biggest heart out of anyone I know."

36. Defendant Williams texted Ms. Brown the following message: "I know I'm taking a risk and I might regret it one day…but what if I told you I've always liked you and wanted to be with you instead of [Ms. Ruiz]?"

37. Unsure of how to proceed, and lacking the understanding that she should contact someone else at Peckham about Defendant Williams' inappropriate contact, Ms. Brown decided she had to submit to Defendant Williams out of fear of retaliation and the loss of her job.

38. Defendant Williams subsequently texted her constantly. For example:

    a. "I can't wait to be your "sugar daddy" and pay for your nails, clothes, etc."

    b. "Everything I did for [Ms. Ruiz] I'm gonna to do for you, and then some."

    c. "Don't worry baby, I got you now and I'm gonna take care of you."

39. Even during work hours, Defendant Williams would continue to text Ms. Brown on a continual basis and expect her to respond promptly.

40. Ms. Brown felt pressured to continue responding to Defendant Williams entreaties, including when he rented a room at a Holiday Inn Express in Diamondale. Ms. Brown felt numb while Defendant Williams initiated sexual intercourse.

41. Ms. Brown acted as if she was another person to survive the shock and horror of what took place.

42. Defendant Williams and Ms. Brown had sexual relations on three occasions. After sexual relations began, Defendant Williams began sharing photos of his private parts, unrequested, with Ms. Brown. On one such occasion, Ms. Brown was in the break room and Defendant Williams entered the building, went straight to the men's room, and sent a text of his genital area to Ms. Brown. Ms. Brown despised getting personal photos of Defendant Williams.

43. Finally, some time later, Ms. Brown lied to Defendant Williams that she had to break off their "relationship" to get back with her old boyfriend.

44. Defendant Williams told her he wanted to remain "friends."

45. Upon information and belief, Defendant Williams was eventually promoted to a higher job title.

46. After going back to work at Watertown A, Ms. Brown began experiencing some mental instability, including feeling depressed, anxious and lonely.

47. Ms. Brown experienced very difficult months of counseling, journaling, meditation and regular prescription medication. It was also at this time that she started self-harm and having mental breakdowns which eventually led then VSS Kassidee Yahsha to help her get into an outpatient program for her mental health.

48. Defendant Williams, now upon information and belief in charge of all of the departments for both Watertown A and B, sought Ms. Brown out on the work floor and brought her up to talk in her supervisor's room where he locked the door.

49. As Ms. Brown started telling him about her search for better health, Defendant Williams became angry. He told her he could help her get her resume together and that "breakdowns and explosions" that she had been having at work were going to lead to her termination.

50. Ms. Brown was crying, embarrassed and spent at least an hour in the locked room with Defendant Williams.

51. Later that day, one of Ms. Brown's supervisors told her that Defendant Williams wanted to speak to her in his building next door.

52. The meeting was awful for Ms. Brown. Defendant Williams brought up her past traumas, her parents' mental illnesses and how she shared the same traits. Ms. Brown felt embarrassed and disregarded.

53. Defendant Williams traveled with Ms. Brown to her next doctor appointment. There he told the doctor everything that Ms. Brown had been going through.

**Work at Peckham**

54. Defendant Peckham holds itself out as a nonprofit vocational rehabilitation organization that provides job training opportunities for persons with significant disabilities and other barriers to employment.

55. Defendant Peckham knew Ms. Brown had severe disabilities. It enrolled her in a rehabilitation program with a Vocational Rehabilitation Specialist ("VSS").

56. Upon information and belief, the VSS developed an individual employment plan that focused on objectives for Ms. Brown to learn skills and behaviors.

57. For example, Ms. Brown underwent Annual Individual Eligibility Evaluations under an AbilityOne Program in which a VSS Evaluator identified Functional Limitations and Supports and Accommodations that Defendant Peckham and its VSS's would apply and that would

not "normally be provided in typical community employment."

58. In its 2017 Evaluation, VSS Grant Bloembergen identified Ms. Brown as "a 27 year old female of mixed race…diagnosed in 2013 with Dysthymic Disorder (long-term depression), Generalized Anxiety Disorder, and a Panic Disorder with Agoraphobia."

59. Ms. Brown performed her job duties and responsibilities in a manner that, at a minimum, demonstrated that she was qualified for her position.

60. Defendant Peckham had knowledge that Ms. Brown has a disability.

61. Defendant Williams knew or should have known Ms. Brown's vulnerability to attention and potential romantic interest.

62. Ms. Brown did not know how to process the attention she was receiving from Mr. Williams but she thought that because he was her manager at Peckham that she had to maintain a romantic relationship with him to keep her job.

63. Other employees at Peckham did or should have noticed the attention that Mr. Williams was paying an inordinate amount of attention to Ms. Brown by spending time near her and continually talking to her in the office.

64. Finally, in March 2022, Ms. Brown broke down, not knowing how to deal with her emotions and what was happening to her.

65. On March 26, Ms. Brown sent an email to her former VSS Kassidee Yahsha. The email said:

> "Hello, I'm writing you to let you know your management has been taking advantage of your employees bryon has been buying gifts and taking advntge of employee for years. These employee r going thru mental breakdown s and he is using his management position to coerce them into romantic relationships."

66. Later that same day, Ms. Brown emailed Ms. Yahsha the following:

> Kassidee, I am having difficulties writing this email because it is very sensitive to me. Given my current mental state and my family's well being, at this point I cannot continue to work at Peckham for any reason – effective immediately. Please do with this information as you feel necessary, but I wish to have no part in the next steps as it is extremely sensitive to me especially at this time. I have only kept this communication going with said manager because for so long I felt it was necessary in order to keep my job. However I am at a point now where I am realizing just how badly I was manipulated by someone in management, and how in turn it has dangerously affected my mental health, along with my family's overall mental health and well-being – in ways I can't even describe.
>
> I have always respected Peckham as a company and everything that it stands for and does in order to help others of different disabilities, including myself. That being said I am aware that the actions of one employee do not represent the entity as a whole.
>
> Thank you Kassidee for everything that you've ever done to help me and to be there for me.
>
> Desirae Brown

67. Ms. Brown's resignation was contemporaneous with her sending the email to Ms. Yasha following a lengthy period of being sexually harassed, assaulted, groomed, and retaliated against by an agent of Defendant.

## **COUNT I – VIOLATION OF TITLE VII – DISCRIMINATION**
### **(As to all Defendants)**

68. Plaintiff repeats and realleges each and every paragraph of this Complaint as though fully set forth herein verbatim.

69. At all times relevant herein, Plaintiff was an employee and Defendant Peckham was an "employer" within the meaning of Title VII of the Civil Rights Act of 1964, 42 USC §2000e, as amended by the Civil Rights Act of 1991 ("Title VII").

70. Plaintiff is a member of a protected class based upon her sex as a female.

71. Plaintiff is a member of a protected class due to her disability.

72. Defendants had a duty under Title VII not to discriminate against Plaintiff in her employment on the bases of sex, or disability.

73. Defendants violated Title VII by discriminating against Plaintiff because of her disability in the following respects:

   a. Subjecting Plaintiff to a physical, romantic relationship;
   b. Ms. Brown has been physically assaulted by Defendant Williams when he had sexual relations with her knowing of her disability;
   c. Defendant Peckham had actual or constructive knowledge of the hostile environment that Plaintiff has been subject to, but continued to put Plaintiff in a position where she was susceptible to harassment;
   d. Treating employees, including Plaintiff, differently than similarly situated non-disabled employees; and
   e. Otherwise discriminating against and disparately treating Plaintiff on the basis of disability with respect to terms, conditions, and privileges of her employment, as stated herein.

74. As a direct and proximate result of Defendants' discriminatory and illegal acts, which acts were based on unlawful consideration of Plaintiff's disabilities, Plaintiff suffered damages, including, but not limited to: (1) loss of past and future employment income and

employee benefits, (2) personal injuries, including but not limited to, mental emotional, and psychological distress, anxiety, humiliation, embarrassment, derogation, pain and suffering, and physical ailments, and (3) a sense of outrage and injury to Plaintiff's feelings.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter its Judgment against Defendants, in favor of Plaintiff, in whatever amount is shown to be established by the proofs in this case, awarding Plaintiff all economic damages, back pay, front pay, compensatory damages, non-economic damages, exemplary damages, punitive damages, attorney fees and costs, and pre- and post-judgment interest, as well as such other and further legal or equitable relief as this Court deems appropriate and available under the law.

### COUNT II – VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT – DISCRIMINATION
### (As to all Defendants)

75. Plaintiff repeats and realleges each and every paragraph of this Complaint as though fully set forth herein verbatim.

76. At all relevant times herein, Plaintiff was an employee and Defendant Peckham was an "employer" within the meaning of Michigan's Elliot-Larsen Civil Rights Act ("ELCRA"), MCL 37.2101, *et seq.*, as amended.

77. Plaintiff is a member of a protected class based upon her sex, race, and disability.

78. At all times relevant herein, under the ELCRA, Plaintiff had a right to employment free of discrimination based on her disability.

79. Defendant violated Plaintiff's rights under the ELCRA by acts, including but not limited to:

    a. Failing to protect Plaintiff from Defendant Williams while in the workplace;

    b. Subjecting Plaintiff to a physical, romantic relationship;

  c. Ms. Brown has been physically assaulted by Defendant Williams when he had sexual relations with her knowing of her disability;

  d. Defendant Peckham had actual or constructive knowledge of the hostile environment that Plaintiff has been subject to, but continued to put Plaintiff in a position where she was susceptible to harassment;

  e. Treating employees, including Plaintiff, differently than similarly situated non-disabled employees; and

  f. Otherwise discriminating against and disparately treating Plaintiff on the basis of disability with respect to terms, conditions, and privileges of her employment, as stated herein.

80. As a direct and proximate result of Defendants' discriminatory and illegal acts, which acts were based on unlawful considerations of Plaintiff's disability, Plaintiff suffered damages, including but not limited to: (1) loss of past and future employment income and employee benefits, (2) personal injuries including but are not limited to mental, emotional, and psychological distress, anxiety, humiliation, embarrassment, derogation, pain and suffering, and physical ailments, and (3) a sense of outrage and injury to Plaintiff's feelings.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter its Judgment against Defendants, in favor of Plaintiff, in whatever amount is shown to be established by the proofs in this case, awarding Plaintiff all economic damages, back pay, front pay, compensatory damages, non-economic damages, exemplary damages, punitive damages, attorney fees and costs, and pre- and post-judgment interest, as well as such other and further legal or equitable relief as this Court deems appropriate and available under the law.

## COUNT III – HOSTILE WORK ENVIRONMENT – TITLE VII (42 U.S.C. §2000e)
### (As to all Defendants)

81. Ms. Brown repeats and realleges each and every paragraph of this Complaint as though fully set forth herein verbatim.

82. At all times relevant herein, Ms. Brown was an "employee" and Defendant Peckham was an "employer" within the meaning of Title VII of the Civil Rights Act of 1964, 42 USC §2000e, as amended by the Civil Rights Act of 1991 ("Title VII").

83. Ms. Brown is a member of a protected class based upon her disability.

84. Ms. Brown was physically and sexually assaulted by Defendant Peckham's employee, Defendant Williams, on site and while working for Defendants.

85. Ms. Brown was subjected to this conduct on the basis of her disability and sex.

86. The physical and sexual assaults included, but were not limited to:

    a. Unwelcome touching by Defendant Williams; and

    b. Conduct of an offensive and sexual nature directed toward Ms. Brown by Defendant Williams.

87. As a result of this conduct, Ms. Brown was subjected to a sexually hostile work environment.

88. The actions of Defendants were intentional.

89. The actions of Defendants were unwelcome, confusing and perceived by Ms. Brown as required to retain her job.

90. The unwelcome sexual conduct was intended to and/or did substantially interfere with Ms. Brown's employment in that it created an intimidating, hostile, and offensive work environment.

91. The conduct of Defendant Williams in physically and sexually assaulting Ms.

Brown because of her disability constitutes discrimination in violation of 42 USC §2000e.

92. As a direct and proximate result of Defendant Williams' unlawful actions against Ms. Brown as described, Ms. Brown has suffered injuries and damages, including but not limited to: (1) loss of past and future employment income and employee benefits, (2) personal injuries including but are not limited to mental, emotional, and psychological distress, anxiety, humiliation, embarrassment, derogation, pain and suffering, and physical ailments, and (3) a sense of outrage and injury to Plaintiff's feelings.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter its Judgment against Defendants, in favor of Plaintiff, in whatever amount is shown to be established by the proofs in this case, awarding Plaintiff all economic damages, back pay, front pay, compensatory damages, non-economic damages, exemplary damages, punitive damages, attorney fees and costs, and pre- and post-judgment interest, as well as such other and further legal or equitable relief as this Court deems appropriate and available under the law.

**COUNT IV – HOSTILE WORK ENVIRONMENT – ELLIOTT-LARSEN CIVIL RIGHTS ACT**
**(As to all Defendants)**

93. Ms. Brown repeats and realleges each and every paragraph of this Complaint as though fully set forth herein verbatim.

94. At all times relevant herein, Ms. Brown was an employee and Defendant Peckham was an "employer" within the meaning of Michigan's Elliot-Larsen Civil Rights Act ("ELCRA"), MCL 37.2101, *et seq.*, as amended.

95. Ms. Brown is a member of a protected class based upon her sex, race and disability.

96. Ms. Brown was physically and sexually assaulted by Defendant Peckham's employee, Defendant Williams, on site and while working for Defendants.

97. Ms. Brown was subjected to this conduct on the basis of her disability.

98. The physical and sexual assaults included, but were not limited to:

    a. Defendant Williams' inappropriate comments regarding Ms. Brown;

    b. Defendant Williams' inappropriate sexual comments about himself;

    c. Unwelcome touching by Defendant Williams; and

    d. Conduct of an offensive and sexual nature directed toward Ms. Brown by Defendant Williams.

99. As a result of this conduct, Ms. Brown was subjected to a sexually hostile work environment.

100. The actions of Defendants were intentional.

101. The actions of Defendants were unwelcome, confusing and perceived by Ms. Brown as required to retain her job.

102. The unwelcome sexual conduct was intended to and/or did substantially interfere with Ms. Brown's employment in that it created an intimidating, hostile, and offensive work environment.

103. The conduct of Defendant Williams in physically and sexually assaulting Ms. Brown because of her disability constitutes discrimination in violation of MCL 37.2101 *et seq.*

104. As a direct and proximate result of Defendant Williams' unlawful actions against Ms. Brown as described, Ms. Brown has suffered injuries and damages, including but not limited to: (1) loss of past and future employment income and employee benefits, (2) personal injuries including but are not limited to mental, emotional, and psychological distress, anxiety, humiliation, embarrassment, derogation, pain and suffering, and physical ailments, and (3) a sense of outrage and injury to Plaintiff's feelings.

WHEREFORE, Plaintiff respectfully requests that this Court enter its Judgment against Defendants, in favor of Plaintiff, in whatever amount is shown to be established by the proofs in this case, awarding Plaintiff all economic damages, back pay, front pay, compensatory damages, non-economic damages, exemplary damages, punitive damages, attorney fees and costs, and pre- and post-judgment interest, as well as such other and further legal or equitable relief as this Court deems appropriate and available under the law.

### COUNT V – ASSAULT AND BATTERY
### (As to Defendant Williams)

105. Plaintiff repeats and realleges each and every paragraph of this Complaint as though fully set forth herein verbatim.

106. On multiple occasions, Defendant Williams physically touched Ms. Brown against her will.

107. Ms. Brown perceived that she had to accept Defendant Williams' actions to retain her job with Defendant Peckham.

108. Ms. Brown's fear of imminent battery was well-founded as Defendant Williams was her manager, physically larger than her, and had physically touched her previously, against her will.

109. Defendant Williams had the present ability to carry out the threat of battery as evidenced by the facts that he did carry out said battery.

110. Ms. Brown did not consent to this touching.

111. Such actions by Defendant Williams constitute an intentional and imminent threat of bodily harm to Ms. Brown.

112. Ms. Brown could not stop Defendant Williams from assaulting and battering her.

113. Defendant Williams' conduct was willful and/or intentional.

114. As a direct and proximate result of Defendant Williams' unlawful actions against Ms. Brown as described, Ms. Brown has suffered injuries and damages, including but not limited to: (1) loss of past and future employment income and employee benefits, (2) personal injuries including but are not limited to mental, emotional, and psychological distress, anxiety, humiliation, embarrassment, derogation, pain and suffering, and physical ailments, and (3) a sense of outrage and injury to Plaintiff's feelings.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter its Judgment against Defendants, in favor of Plaintiff, in whatever amount is shown to be established by the proofs in this case, awarding Plaintiff all economic damages, back pay, front pay, compensatory damages, non-economic damages, exemplary damages, punitive damages, attorney fees and costs, and pre- and post-judgment interest, as well as such other and further legal or equitable relief as this Court deems appropriate and available under the law.

### COUNT VI – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (As to Defendant Williams)

115. Ms. Brown repeats and realleges each and every paragraph of this Complaint as though fully set forth herein verbatim.

116. Defendant Williams' decision to touch Ms. Brown's body was extreme and dangerous.

117. Defendant Williams' decision to physically and sexually assault Ms. Brown was intentional.

118. Defendant Williams' conduct has caused Ms. Brown to experience emotional distress.

119. As a direct and proximate result of Defendant Williams' unlawful actions against Ms. Brown as described, Ms. Brown has suffered injuries and damages, including but not limited

to: (1) loss of past and future employment income and employee benefits, (2) personal injuries including but are not limited to mental, emotional, and psychological distress, anxiety, humiliation, embarrassment, derogation, pain and suffering, and physical ailments, and (3) a sense of outrage and injury to Plaintiff's feelings.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter its Judgment against Defendants, in favor of Plaintiff, in whatever amount is shown to be established by the proofs in this case, awarding Plaintiff all economic damages, back pay, front pay, compensatory damages, non-economic damages, exemplary damages, punitive damages, attorney fees and costs, and pre- and post-judgment interest, as well as such other and further legal or equitable relief as this Court deems appropriate and available under the law.

**DEMAND FOR TRIAL BY JURY IS HEREBY MADE**

Dated: February 23, 2024

GREWAL LAW PLLC

By: /s/ Tim P. Seeger
TIM P. SEEGER (P83315)
*Attorney for Plaintiff*
801 Broadway, NW, Ste. 302
Grand Rapids, MI 49504
(616) 259-8463
tseeger@4grewal.com

**DEMAND FOR JURY TRIAL**

**NOW COMES** Plaintiff, Desirae Brown, by and through her attorneys, Tim P. Seeger and GREWAL LAW PLLC, and hereby makes a demand for a trial by jury in the above-entitled matter.

Dated: February 23, 2024                                                                                          GREWAL LAW PLLC

By: /s/ Tim P. Seeger
**TIM P. SEEGER (P83315)**
*Attorney for Plaintiff*
801 Broadway, NW, Ste. 302
Grand Rapids, MI 49504
(616) 259-8463
tseeger@4grewal.com